84   195
36a   72
36a  401
84   195
53a  600
84   195
100a ⁴534
84   195
cl09a⁴339

84   195
110a  ⁴399
84   195
e210  ³361
111a  ²214
111a  ⁴215
111a  ⁴216
112a  ³583

## MATTHIAS SCHMIDT *et al.*

### *v.*

## MARY MITCHELL.

1. CHANGE OF VENUE—*right of party consenting to, to withdraw his consent.* The statute relating to change of venue requires that an application for such change be made by or with the consent of all the parties plaintiff or defendant, as the case may be; and where such application is made by one defendant, with the consent of his co-defendant, the latter may withdraw his consent at any time before the motion is decided, and thus prevent the change being granted.

2. INTOXICATING LIQUOR—*evidence to show whether injury was the result of intoxication or exposure.* If a person, in consequence of intoxication, should get into a difficulty, resulting in being shot in the thigh, the party selling the liquor to him may be responsible for the direct consequences naturally resulting from the injury received, but if, after becoming sober, he should disregard the instructions of his physician, and walk upon the injured limb, and thus cause inflammation to set in, from the effect of which it becomes necessary to amputate the limb, resulting in his death, the liquor seller will not be responsible to the wife of the deceased for the loss of his life; and it is error to exclude testimony offered by the defendant which tends to prove that the death was the result of recklessness and exposure on the part of the deceased.

3. SAME—*liquor seller not responsible for death caused by mistreatment of party wounded in consequence of his intoxication.* If the death of a party who receives a wound while intoxicated can be traced as the natural and probable result of any new or intervening cause, such as reckless exposure of himself, or amputation of the wounded limb when an amputation was not necessary, the liquor seller will not be responsible to the wife for the death.*

4. DAMAGES—*must be natural result of act complained of.* The damages to be recovered in an action must always be the natural and proximate consequence of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered as too remote.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

*See *Shugart* v. *Egan*, 83 Ill. 56.

Messrs. SACKETT & BENNETT, for the appellants.

Messrs. KILGOUR & MANAHAN, and Mr. M. H. WILLIAMS, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action, brought by Mary Mitchell, against appellants, who are alleged to have sold the plaintiff's husband intoxicating liquors which caused his intoxication, by reason of which, and while the same continued, he became quarrelsome, and made a disturbance in the night, at the house of one Henry Friedenbach, and while making such disturbance, and by reason thereof, the said Mitchell, the husband of the plaintiff, received a mortal wound from a bullet discharged at him from a pistol used by said Friedenbach in defense of his house, of which wound Mitchell died.

The court overruled a motion for a change of venue, and this is the first error relied upon by appellants. Section 9, chapter 146, Revised Statutes of 1874, page 1094, declares, where there are two or more plaintiffs or defendants, a change of venue shall not be granted unless the application is made by or with the consent of all the parties plaintiff or defendant, as the case may be.

It appears that the petition for a change of venue was presented by one of the three defendants. At the time the motion was made, the other two defendants consented, but before any action was taken by the court, one of the defendants withdrew his consent, and, when the motion came on for a hearing, he filed a written protest against the venue being changed. We see no reason why one defendant may not revoke the authority given a co-defendant to present a petition of this character, at any time before the court has acted upon it. If this may be done, the court could not do otherwise than deny the application, because, under the statute, the venue could not be changed without the consent of all the defendants, and they did not all consent.

On the trial, the defendants offered to prove by Dr. Snyder that he was the attending physician and surgeon called by Mitchell to treat him the same night and soon after the injury was received by him; that, as such physician, he instructed Mitchell that he should not use his leg by walking upon it, as it would be dangerous, and might produce inflammation or some other difficulty; that Mitchell disregarded such orders, and did, within a few days after the injury, use his leg by walking upon it, and that these instructions were given on the night of the injury, and several times afterwards. The offered evidence the court would not admit to the jury, and the decision is relied upon as error.

The evidence which was introduced tends to prove that Mitchell, the husband of the plaintiff, was in the habit of getting intoxicated, and, when in that condition, he was quarrelsome. It also appears that, on the afternoon and evening of January 25, 1874, he obtained of the defendants, at their saloons in Sterling, liquors, and became intoxicated. He resided some six or eight miles from Sterling, on the farm of Henry Friedenbach. About 10 o'clock at night, he started home, and near midnight he made an attack on the house of Friedenbach, and, while in the act of breaking in the windows, he was shot in the thigh, some four inches below the groin. A surgeon was at once called to treat the wound. For five or six days, Mitchell appeared to be recovering from the effect of the injury. After that, however, for some cause, the symptoms became unfavorable and dangerous, and, upon a consultation of surgeons, it was thought best to amputate the leg. On the 6th day of February the operation was performed, and in about three hours Mitchell died.

It is clear, from the evidence, that appellee has been injured in her means of support, and the proposition does not admit of controversy, that, if the death was the natural and proximate result of the intoxication produced, in whole or in part, by liquors obtained of appellants, then appellee's right of recovery can not be questioned; but if the wound received by Mitchell was slight, and not in itself dangerous, and his

death resulted from a failure to observe proper care and precaution after the injury, the loss plaintiff sustained could not be regarded as a direct consequence of the intoxication, for which the defendants should respond in damages.

If a person, while intoxicated, should receive a slight wound upon the arm, in consequence of the intoxication, the liquor dealer who sold the liquors that produced the intoxication might be responsible for the direct consequences which would naturally flow from the injury received; but suppose the person injured, after he became sober, should, in a reckless manner, expose himself, and the exposure should result in inflammation and gangrene in the limb to such an extent that amputation was necessary, the loss occasioned by such misconduct could not be visited upon the vender of the liquor.

Parsons (vol. 3, page 177) says: "It is sometimes difficult to draw the line between what are and what are not the natural consequences of an injury. Always, however, if the consequences of the act complained of have been increased and exaggerated by the act, or the omission to act, of the plaintiff, this addition must be carefully discriminated from those natural consequences of the act of the defendant, for which, alone, he is responsible." If, therefore, the wound inflicted upon the deceased was in consequence of the intoxication, it was, then, a material question for the jury to determine, from the evidence, whether the wound received was the cause of Mitchell's death, or whether the death was the result of misconduct on his part in using his leg contrary to and in disregard of the advice of his surgeon. The evidence offered and excluded had a direct bearing upon this question. It was proper for the consideration of the jury, and it was error to exclude it.

In the instructions given for the plaintiff, the sixth and eleventh are claimed to be erroneous. They are as follows:

"6. The court instructs the jury that if they believe, from the evidence, that defendants, or either of them, sold Frederick Mitchell intoxicating liquors, by reason of which said Mitchell

was intoxicated, and by reason of such intoxication said Mitchell made an unlawful attack on the house of one Friedenbach in the night time, and was, by reason thereof, shot by said Friedenbach, in defense of his house, and received in such attack a wound, which seemed in its nature serious or dangerous, and thereupon employed physicians, of ordinary standing in the community, to attend on the wound, and said physicians, in the use of ordinary skill, decided to amputate the leg of said Mitchell, and that said Mitchell died soon after such amputation, if done in good faith, by surgeons of ordinary standing in the community, and in an ordinarily skillful manner, it can not be set up by defendants in excuse or extenuation of their acts, and the jury should find for the plaintiff."

"11.  The jury are instructed that the degree of skill or extent of application of physicians is not in issue in this case, and that if the physicians, who performed this amputation in good faith, believed the same to be necessary, and performed the same with reasonably ordinary skill, and the patient died sooner than he would from the wound, if any, alone, then such earlier death, even if proved, would be no excuse for those, if any, who caused his intoxication, as alleged in the declaration, from which the injury arose, which necessitated the amputation, in the judgment of such physicians."

It will be observed that the statute which authorizes the action confines the damages to be recovered to such as may be regarded the direct consequence of the intoxication.  The language of the act is, every husband, wife, child, parent, guardian, employee, or other person who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action, etc. Greenleaf, in vol. 2, on Evidence, sec. 256, announces the rule, that " the damages to be recovered must always be the natural and proximate consequence of the act complained of."

There can be no doubt in regard to the rule, that, where damages are attempted to be recovered for an injury, the dam-

ages must result as the natural and proximate consequence of the wrongful act, but it is often difficult to determine whether the cause of an injury is proximate or remote.

In *Tweed* v. *Insurance Co.* 7 Wall. 44, the Supreme Court of the United States, in discussing this question, said: "One of the most valuable of the *criteria* furnished us by the authorities is, to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief, the other must be considered too remote."

In *Fent* v. *Toledo, Peoria and Warsaw Railway Co.* 59 Ill. 349, this court quoted, with approval, the language of Parsons, in his work on Contracts, vol. 3, page 179, as follows: " That every defendant shall be held liable for all those consequences which might have been foreseen and expected as the result of his conduct, but not for those he could not have foreseen, and was, therefore, under no moral obligation to take into consideration." The same doctrine was again announced in *Toledo, Wabash and Western Railway Co.* v. *Muthersbaugh*, 71 Ill. 572.

In instruction number six, two new causes intervened between the death of Mitchell and the alleged cause, the intoxication, either of which might stand as the cause of the loss for which the action is brought, and yet the jury might infer from the instruction that they were not bound to regard either.

It is apparent that the amputation was the immediate cause of Mitchell's death, and while it may be true, if an action was brought against the physicians, the use of ordinary skill might be a protection to them, yet it by no means follows, if, in fact, the amputation was unnecessary. and the nature of the wound did not require it, that the defendants could be held liable for the damages occasioned by the loss of Mitchell's life, for the obvious reason that his death was not in consequence of the intoxication, but in consequence of a new agency, with which they were not connected and for which they can not be held responsible.

As to the eleventh instruction, we perceive no ground upon which it can be sustained. Suppose the physicians who performed the operation believed it to be necessary, and exercised ordinary skill in performing the operation, if they were, in fact, mistaken, and no operation was needed, and the deceased would have recovered had he received no treatment whatever from physicians, we apprehend the defendants could not be held liable for damages resulting from an error in the judgment of the physicians, and yet, as we understand the instruction, it announces the doctrine that they would be responsible.

The action of the court in the giving and refusing other instructions has been discussed, but it will not be necessary to discuss the questions involved further. What has been said would seem to be sufficient to settle the real controverted questions in the case. If the death of Mitchell could be regarded as the natural and proximate consequence of the intoxication, then the defendants would be liable to the plaintiff for the loss. If, on the other hand, the death was in consequence of a new agency intervening, they can not be held responsible.

While the defendants might have anticipated and foreseen the intoxication of Mitchell might have resulted in his falling upon the street and receiving personal injuries, or being thrown from his sleigh on the road home, and thus injured, or, perhaps, received injuries from exposure, yet it can not be held that the defendants might have foreseen and expected, as a consequence of the intoxication, that Mitchell would, after going a distance of six or eight miles, make an attack upon a neighbor's house, and be wounded by a shot; or that, by carelessness, after being wounded, his life would be in danger; or that a leg would be amputated, when amputation was unnecessary, resulting in death. These and kindred things of a like nature may be regarded not as the proximate consequence of the intoxication, but as the remote cause, for which the defendants can not be held responsible.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. Chief Justice Sheldon and Mr. Justice Scott, dissent.