## CARRIE DAVIS, RESPONDENT, *v.* WILLIAM R. STANDISH, APPELLANT.

*Civil damage. act — a wife may recover the damages sustained by the death of her husband — when intoxication is the proximate cause of the death — one selling without a license liable for exemplary damages — Northampton tables — court will take judicial notice of them.*

This action was brought, under the civil damage act, to recover the damages occasioned to the plaintiff by the death of her husband, who was alleged to have been drowned in consequence of having been intoxicated by liquor sold to him by the defendant. It appeared that on October 17, 1877, Davis, the deceased, went to Canandaigua lake to fish; that he drank twice at the bar of the public house, kept there by the defendant, purchased a bottle of whisky and took it on the lake with him in a boat hired from the defendant; that on his return he drank at the bar at least ten times between four and six o'clock in the afternoon; that he then started down the lake with one Wood in a small boat which was overturned and Davis was drowned. Wood reached the shore though he was not as good a swimmer as Davis. The defendant claimed that at the time he sold the liquor to Davis it was arranged that the latter should go home in a stage kept by the defendant; that Davis was afterwards induced by Wood to go to his (Wood's) house in the boat, and that this intervening act of Wood, and not the intoxication, was the immediate and proximate cause of the death and he requested the court to charge accordingly.

The court charged, that "if the proof in any case under this law shows that the intoxication was to such an extent as to deprive the man of the normal use of his faculties, either physical or mental, so that he is rendered incapable of caring for himself and of protecting himself from the results of accidents or circumstances to which he was subjected, and by reason of such deprivation of his natural powers of body or mind his death is produced by his inability to protect or defend himself against circumstances which threaten his life, it may be said in those cases, in general terms, that such intoxication is the proximate and direct cause of death. It is not necessary that the death, or the circumstances which immediately led to or produced it, should have been within the contemplation of the person who sold the. liquor. The man who sells liquor to another, whether lawfully or unlawfully, is not protected against the provisions of the statute, because he does not, at the time he sells the liquor, contemplate it will lead the man into circumstances where he is liable to lose his life. * * * It is only necessary that the liquors sold or furnished should have produced either in whole or in part a state of intoxication, and that that state of intoxication should have been the direct and proximate cause of the death, whether the circumstances under which the death occurred were within the possible or impossible contemplation of the party who sold or furnished the liquor."

*Held,* that the charge was a correct statement of the law.

That the jury were not confined to an inquiry as to whether intoxicating liquor was the immediate cause of the death; that if it was the proximate cause it justified a verdict for the plaintiff.

Under the civil damage act a wife may recover the damages caused by the death of her husband.

The court charged, that the fact that the defendant was selling liquor without a license might be considered as a basis for exemplary damages.

*Held,* no error.

The court charged, that the jury in estimating the damages might consider the expectancy of life of Davis and the plaintiff based upon the Northampton tables. The defendant excepted to this, and upon this appeal claimed that the attention of the jury was not called to the fact that the period during which the plaintiff would be entitled to support from the earnings of her husband was limited to their joint lives, and that the probable duration of their joint lives was less than the probable duration of either separately, and also that there was no proof given of the tables.

*Held,* that the objections could not be raised on appeal as they were not suggested below.

That although the tables were not put in evidence the court could take judicial notice of them as they were referred to and made a part of its rules. (Rule 71.)

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury rendered at the Ontario Circuit.

The action was brought to recover the damages occasioned to the plaintiff by the death of her husband, who was alleged to have been drowned while intoxicated from liquor sold to him by the defendant.

The judge charged among other things, as follows: " There is another principle involved, and that is that there a certain expectation of life, which in case of every man is dependent upon his age. Mr. Davis' age was twenty-nine years. By the law of this State, by the system of estimation adopted as part of the rules of the court for the guidance of the court in cases of judicial investigation, it is ascertained that the expectation of life of a man of twenty-nine years of age is eleven years and three quarters and a trifling fraction above that. It was then to have been expected under this rule, which is ascertained by the combining of statistics through a long period of years, it is ascertained that the plaintiff being younger than the deceased, had a longer expectation of life. I state these rules, not as necessarily governing you, but they may reasonably be considered in estimating the amount of strict compensation which

this plaintiff might recover in your judgment for the loss which she shows herself to have sustained, if she has sustained it."

The defendant's counsel duly excepted to all that part of the charge where the court instructed the jury that they may take into consideration the expectancy of life based upon the Northampton tables.

*H. L. Comstock,* for the appellant.

*E. B. Pottle,* for the respondent.

SMITH, P. J.:

The plaintiff brought this action under the statute known as the "Civil Damage Act," alleging that her husband, Edwin Davis, came to his death by drowning in Canandaigua lake, in consequence of having been intoxicated by liquor sold to him by the defendant, and that she was injured thereby in her means of support. She recovered a verdict for the sum of $1,303.45.

The evidence tended to show that on the 17th of October, 1877, Davis went to the lake for the purpose of fishing, and went to the public house kept by the defendant on the shore of the lake; that Davis drank twice at defendant's bar, and got a bottle of whisky of defendant, which he took on the lake with him in a boat hired of the defendant for the purpose of fishing, and on his return he drank at defendant's bar at least ten times from about four to six o'clock in the afternoon, and then started down the lake with one Wood in a small boat, which was overturned and Davis was drowned.

The only questions in the case which it is necessary to discuss are raised by exceptions taken to the refusal to nonsuit, and to the charge of the judge, and his refusal to charge as requested.

At the close of the plaintiff's testimony, the defendant's counsel moved for a nonsuit on two grounds. First, that under the statute the plaintiff has no right of action for injury resulting from the *death* of her husband. The contrary was held in the unreported case of *Mead* v. *Stratton,* decided in this department in April, 1879, and recently affirmed in the Court of Appeals.

The other ground of the motion for a nonsuit, was that the liquor sold by the defendant to Davis was not the proximate cause

of his death, but was, at most, only a remote and uncertain cause of such death, while other and more immediate and proximate causes intervened and caused such death. That position is understood to be based upon the assumption that at the time when the defendant sold to Davis the liquor which he drank in the afternoon, the defendant could not have anticipated that Davis would go out on the lake again that night, the evidence being that he had arranged with the defendant for his passage home by the stage, of which defendant was proprietor, and after such arrangement was made he was induced by Wood to change his mind and go to Wood's house, he and Wood taking a skiff on the lake, part of the way. Shortly after they started, the skiff upset, and Davis, although a good swimmer, was drowned, while Wood, who could not swim as well as Davis, succeeded in getting to the shore. The argument of the defendant's counsel is understood to be that the active agency of Wood in persuading Davis to go home with him, and not to go in the stage as he had arranged, was the more immediate and proximate cause of the drowning, and as such change of purpose could not have been anticipated by the defendant when he furnished the liquor which produced the intoxication, he is not liable. Substantially the same question is involved in one of the exceptions taken to the refusal of the judge to charge as requested, and also to a part of his charge, and as we think the charge of the judge presents the true rule on the subject, those exceptions may as well be stated here, and considered with the last branch of the motion for a nonsuit.

The defendant's counsel requested the court to charge that if the jury believed from the evidence that Davis had arranged with the defendant for his passage in the stage on his way home, and the defendant believed and had reason to believe that Davis intended to go by the stage, then he is not liable for any damages resulting to the plaintiff arising from the death of her husband by drowning, if such drowning was the result of Davis' change of purpose in that respect, at the request of Wood, which was not known to the defendant when he furnished Davis with the intoxicating liquor. The court declined to so charge.

The judge instructed the jury that "it is safe to say that if the proof in any case under this law shows that the intoxication was to such an extent as to deprive the man of the normal use of his facul-

ties, either physical or mental, so that he is rendered incapable of caring for himself and of protecting himself from the results of accidents or circumstances to which he was subjected, and by reason of such deprivation of his natural powers of body or mind his death is produced by his inability to protect or defend himself against circumstances which threaten his life, it may be said in those cases, in general terms, that such intoxication is the proximate and direct cause of death. It is not necessary that the death, or the circumstances which immediately led to or produced it, should have been within the contemplation of the person who sold the liquor. The man who sells liquor to another, whether lawfully or unlawfully, is not protected against the provisions of the statute, because he does not, at the time he sells the liquor, contemplate it will lead the man into circumstances where he is liable to lose his life. * * * It is only necessary that the liquor sold or furnished should have produced either in whole or in part, a state of intoxication, and that that state of intoxication should have been the direct and proximate cause of the death, whether the circumstances under which the death occurred were within the possible or impossible contemplation of the party who sold or furnished the liquor." We have transcribed this part of the charge, because we think it a correct statement of the law, and that it fully meets the exceptions under consideration. The learned counsel for the defendant cites several cases from other States which he conceives lay down a different doctrine. They will be referred to briefly. In *Shugart* v. *Egan* (83 Ill., 56), it was held that the seller of intoxicating liquor to a husband who becomes intoxicated thereby, and in consequence of his abusive language is killed by a third party, is not liable in damages to the wife for the death. That decision was well put upon the ground that the intervening, independent act of the third person was the direct and immediate cause of the death. Upon the same principle, the unreported case of *Wright* v. *Read* was decided in this department in March, 1881. There, the husband of the plaintiff while intoxicated by liquor furnished him by the defendant, went into a livery stable at night, and laid down upon the hostler's bed, and the hostler coming in late in the night and finding him asleep, killed him with an axe. The plaintiff was nonsuited at the circuit, and we affirmed the nonsuit, on the ground that the intoxication was

not the proximate cause of the death. The same principle was applied in *Schmidt* v. *Mitchell* (84 Ill., 195), cited by the appellant's counsel. There the defendant sold liquor to plaintiff's husband, whereby he became intoxicated, got into an affray, and was wounded, and by reason of the husband's reckless diregard of the surgeon's directions, the wound became so dangerous as to lead the surgeon to amputate the leg, whereupon the husband died. In *Krach* v. *Heilman* (53 Ind., 526), the deceased, while intoxicated, and lying in a wagon, driven by another person, who also was intoxicated, was fatally injured by a barrel of salt falling over on him. If the injury was not the result of the inability of the deceased to protect or extricate himself by reason of his intoxication the case was well decided upon the principle referred to. That it was not so caused is to be inferred from the fact that the court, in its opinion, supposes by way of illustration the case of a man who by reason of intoxication lies down under a tree and a storm blows a limb down upon him and kills him, or lightning strikes the tree and kills him. In these several cases, the falling barrel, the falling limb and the stroke of lightning were intervening, independent causes, directly producing the death, and their fatal effect was not owing to the victim's intoxication. But in the present case the evidence warranted the conclusion that the drowning was the result of Davis' inability to use his normal powers by reason of intoxication; and if that was the case, the intoxication was the proximate cause of his death. We are of the opinion that the exceptions noticed thus far were not well taken.

The judge was asked to charge the jury that if they believed from the evidence that Davis' death was caused by a blow inflicted upon him by Wood, which so far stunned and disabled Davis that he was thereby rendered incapable of swimming to the shore, when he would have otherwise been able to swim to the shore, the defendant is not liable. The judge did not in terms refuse to charge in accordance with such request; on the contrary, he gave an instruction to the jury which he said was suggested by the request. That instruction was, in substance, that notwithstanding Davis' intoxication (if they should find he was intoxicated) if his death was solely, immediately and without reference to his intoxication caused by an assault upon him by persons in the boat the plaintiff could not recover. This, it seems to us, was equivalent to the request in

substance.  If, as the request assumed, Davis was able to swim to the shore but for the assault, and he was drowned in consequence of being disabled by the assault, then the assault was the sole and immediate cause of his death without reference to his intoxication, and in such a case the jury were told the plaintiff could not recover. The fact that the judge used his own language instead of that of the counsel in charging the jury is immaterial if the charge substantially met the request.   The defendant's counsel argues that the jury were left to infer that if Davis' intoxication at all contributed to his death or to his being disabled from swimming, in connection with the blow or the assault upon him, the defendant was liable though Davis would not have been drowned if he had not been thus assaulted.   We think that construction of the charge is hardly warranted.   If Davis would not have been drowned but for the assault, then the assault was the sole cause of death, without reference to Davis' intoxication, and in such case the jury were told they must find for the defendant.

But so far as the appeal book shows the request was not justified by the evidence.   There is no proof that Davis received a blow from Wood or any other person.   There was proof of marks of a bruise seen on Davis' forehead after his body was recovered from the water, and the evidence would have justified the jury in finding that the bruise occurred before death.   But there was no evidence as to whether it happened before or after Davis went into the boat with Wood.   Some witnesses testified that Wood said soon after he reached the shore that Davis clung to him or his clothes, and he kicked him off; but those declarations were not evidence. Wood was called as a witness, but he did not testify that he struck or kicked Davis.   In short, while the evidence shows that Davis was grossly intoxicated, there is no evidence whatever, so far as we have discovered, that he was disabled from any other cause.

An exception was taken in these words: "To that part of the charge where the court discusses the difference between the immediate and proximate cause of death."   A considerable part of the charge was devoted to that subject.   The jury were told that there was a distinction between a "proximate" and an "immediate" cause, and between a "proximate" and a "remote" cause.   That if the intoxication was a "remote" cause only of the death, the action

could not be maintained, but if it was the "proximate," although not the "immediate" cause of death, the action was so far made out.    And the judge illustrated the difference between an "immediate" and "proximate" cause by supposing the case of an intoxicated man falling into the water and drowning; in such case, said the judge, the drowning is the immediate cause, and the intoxication, if that is what caused him to fall into the water, is the proximate cause.    And in this case, in order to find for the plaintiff, the jury must find the intoxication was the proximate cause of death. We find no error in the charge on that subject; if any particular portion of it were objectionable it should have been specifically excepted to.

It follows from what has been said upon the last point that the charge that the jury were not confined to an inquiry whether intoxicating liquor was the immediate cause of the death of Davis, was not erroneous.

The court charged that the fact that the defendant was selling liquor without a license might be considered as a basis for exemplary damages; and it was excepted to.    It is true the statute in giving a right of action makes no distinction between the licensed and the unlawful selling of liquor.    But it is also true that it authorizes the recovery of exemplary, as well as compensatory damages. The statute has not said in what cases punitive damages may be given, and we must therefore look to the common law.    It is argued by the appellant's counsel that it is illogical and unjust to allow the plaintiff in an action of this kind to recover damages by way of punishment to the defendant for the violation of a public statute, for which he is liable to be proceeded against criminally. But in many cases of willful wrong the evil effect of the act upon the public has been treated as an element of punitive damages. Thus, in an action for libel, the public character of the plaintiff as an officer of the government, and the evil example of libels have been held to be proper subjects for the consideration of the jury respecting the amount of damages.    (*Tillotson* v. *Cheetham*, 3 Johns. R., 56, 64.)    And in vindictive actions it is every day practice to charge the jury that they are to inflict damages for example's sake and by way of punishing the defendant.    In view of these rules of the common law, we are inclined to the opinion that the legislature

intended them to apply to actions brought under the statute, and that the circumstance that the defendant, in selling the liquor which produced the intoxication and the resultant injury, was acting in open violation and defiance of law, may be considered as a basis of exemplary damages. In *Quain* v. *Russell* (12 Hun, 376) it was held by the General Term in the third department, that in an action under the statute the defendant's license to sell liquors was admissible in evidence, not as a bar to the action, but to mitigate damages. If these views are correct they dispose of the objection taken to the admission of evidence of the fact that the defendant had no license, and to the refusal to charge that such fact was immaterial.

An exception was taken to the charge that the jury in estimating damages might consider the expectancy of life of Davis and the plaintiff based upon the Northampton tables. The objections urged in the brief of the appellant's counsel are that there was no proof of the Northampton tables, and that the charge took no notice of the fact that the period during which the plaintiff would be entitled to support from the earnings of her husband was limited to their joint lives, and that the probable duration of their joint lives was less than the probable duration of the life of either of them separately. It is a sufficient answer to each of these objections to say that neither of them was suggested at the trial, and if either had then been urged it might have been obviated. The exception taken, merely raised the question whether the expectancy of duration of life, as shown by the tables, was proper to be considered by the jury. Of that there can be no doubt. Again, as to the objection that the tables were not put in evidence, the court can take judicial notice of its own rules, and the Northampton tables are referred to in Rule 71, and made a part of it. In *Wager* v. *Schuyler* (1 Wend., 553), the tables were used by the court in *banc*, for the same purpose as in this case, a verdict having been taken for the plaintiff, subject to the opinion of the court, for a nominal sum, to be increased or diminished as the court should order.

These views dispose of all the exceptions requiring consideration and lead to the conclusion that the judgment should be affirmed.

HARDIN, J., and HAIGHT, J., concurred.

Judgment affirmed.