Chicago Title & Trust Co. v. City of Chicago.

## Chicago Title and Trust Co., Executor, v. City of Chicago.

1. INJUNCTIONS—*No Wrong Committed by Applicant Unless He Has Acted Maliciously and Without Probable Cause.*—An injunction is not the act of the party applying for it, but the act of the court. It issues because the court is of the opinion that it ought to issue and so orders. No wrong is committed by the applicant although it is dissolved, unless he was acting maliciously and without probable cause.

2. SAME—*Damages for Maliciously Suing Out, Not Recoverable in an Action upon an Injunction Bond.*—Damages for the malicious suing out of an injunction can not be recovered in an action upon the injunction bond.

3. DAMAGES—*Must be the Natural and Proximate Result of the Wrongful Act.*—Damages must always be the natural and proximate result of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the injury, the first must be considered as too remote.

Bill for an Injunction.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed November 17, 1903.

This is an appeal from an assessment of damages upon the dissolution of an injunction.

On September 25, 1884, the then Town of Lake View filed its bill of complaint against Parker R. Mason, Henry Kohlsaat and Peter Kohlsaat, alleging, among other things, that blocks 5 to 16 of Pine Grove, a subdivision of part of fractional section 21, T. 40 N., R. 14, in Cook county, Illinois, extended from Evanston avenue to Lake Michigan, and in said subdivision blocks 6, 7 and 12 thereof were so laid out that each was bounded on the east by a line marked on the plat of the subdivision; that between said line and the lake shore was a strip of land extending from the north to the south line of said subdivision, and that the defendants, pretending to be the owners of said strip, were engaged in carrying away sand and gravel therefrom. The bill prayed to enjoin them from doing so. On the same day an injunction to that effect issued without notice to the defendants and was served on Parker R. Mason. It remained in force until July 13, 1885, when it was dissolved. A suggestion of damages was filed August 15, 1885, and at the July term, 1902, of the Superior Court, a decree was entered assessing damages in favor of appellant as executor of Mason, who had died pending the suit, and against appellee as legal successor of the Town of Lake View.

It appears that upon the hearing of the bill, which took place in July, 1892, a final decree was entered sustaining the bill and restoring and making perpetual the preliminary injunction. This decree was reversed by the Supreme Court, and its opinion, favorable to Mason, is part of the present record.

The strip of land in respect of which the bill asked for an injunction lay in front of said blocks 6, 7 and 12, between their east line and the lake, and was 2,172 feet long from north to south, and from 160 to 177 feet wide. Since 1871 Mason had been in possession and claimed to be the owner of the land in front of block 7, and considerable to the north and south of it. The length of that part of the strip in which he was interested was claimed by him to be 1,858

Chicago Title & Trust Co. v. City of Chicago.

feet.    In his suggestion of damages he asked, first, solic-
itor's fees for procuring the dissolution of the temporary
injunction; second, damages for the value of the sand and
gravel which he was enjoined from removing during the
lifetime of the injunction; and third, damages to his lawn
lying west of the strip in controversy by reason of the sand
blowing and drifting thereon.    For the first item the court
allowed $500, and with this appellant is satisfied.    For the
second item the court allowed $500, whereas appellant con-
tends it should have been allowed $10,000.    Item No. 3 was
rejected altogether.

EDWARD ROBY and ARTHUR HUMPHREY, attorneys for
appellant.

GRANVILLE W. BROWNING, attorney for appellee; CHARLES
M. WALKER, Corporation Counsel, of counsel.

MR. JUSTICE STEIN delivered the opinion of the court.
First.    The proof tends to show that the lake washes
sand and gravel upon the strip from time to time, and the
wind drifts sand thereon; that the sand and gravel have a
merchantable value, and Mason was in the habit of remov-
ing and selling them both before and after the injunction;
that when holes were dug in the sand for the purpose of
removing it, the wind and the lake would in the course of
time refill them; that gravel not taken is liable to be
washed away and buried by the lake, and sand not caught
is liable to drift and be blown away.    It was upon the
gravel and sand which disappeared and were dissipated
while the temporary injunction was in force that the
second item was predicated.
There is no proof how much sand or gravel was on hand
when the injunction issued or at any time while it was in
force, or how much was taken out and sold during that
time.    Mason himself testified that he could not tell and
that he kept no account except for eight or nine months
" about two years ago," (he testified April 19, 1890).    No
books or account were offered in evidence.    " The children

took the money and I took money and everybody took money; I think if I got half of it I was lucky." "There were no regular customers. Kept no account with any one."

There is proof that the quantity of the sand and gravel on hand at any time was uncertain; it depended on whether there was wind, and its velocity and direction. For weeks and sometimes for a month no sand or gravel could be had. Frequently when the gravel (which was the more valuable) was washed in, it would be washed away by the action of the water unless at once removed. Both the sand and gravel were treated as public property. They were taken away without paying for them. One witness says:

"They (meaning people generally) carted away hundreds of thousands of loads" from the strip in controversy and the beach to the north and south of it. "In regard to this strip they would get there at three o'clock in the morning and cart it away. It was denuded of sand from one end to the other."

The only item of testimony savoring of certainty and of sufficiently specific character to afford a foundation for calculating the damages is that of Mason when he says that before the injunction he took in from $15 to $70 per day, and after the injunction "the same, all the way from $15 to $40 per day." This testimony was given nearly five years after the dissolution of the injunction, which perhaps accounts for the witness regarding $40 and $70 as the same. It is apparent that the witness had no data to base it on, and that it was but conjecture and surmise. When it is borne in mind that the winter season would naturally interfere with his operations, the amount assessed as damages under this head would seem to be sufficient.

The contention of counsel—not supported by any of the cases which they cite—that no definite proof from which damages can be computed is requisite, that the complainant having obtained an injunction which was dissolved occupies the position of a tort feasor, and that damages should be awarded upon that theory, is not tenable. The assessment should not exceed the damages actually sustained.

Collins v. Sinclair, 51 Ill. 328.    An injunction is not the
act of the party applying for it, but the act of the court.
It issues because the court is of opinion it ought to issue
and so orders.    No wrong is committed by the applicant
although it be dissolved, unless he was acting maliciously
and without probable cause.    Here no such claim is put
forward, and if it were there is no proof to sustain it; and
if there were such proof it would not avail in this form of
proceeding.    Damages for the malicious suing out of an
injunction can not be recovered in an action upon the injunc-
tion bond.    So held in Burnap v. Wright, 14 Ill. 301, a suit
on a *ne exeat* bond, the condition of which was substantially
the same as that of the bond herein.

Second.    For the injury to Mason's lawn by the sand
being blown thereon from the strip on account of his being
enjoined from removing it, the complainant in the bill can
not be made responsible.    The proximate cause of the
injury was the wind and not the injunction.    The damages
must be such as naturally result from the issuing of the
writ; remote and speculative damages should not be taken
into consideration.    Burnap v. Wight, *supra*.    They must
always be the natural and proximate result of the wrongful
act complained of.    If a new force or power has intervened,
of itself sufficient to stand as the cause of the injury, the
first must be considered as too remote.    Schmidt v. Mitch-
ell, 84 Ill. 195; Shugart v. Egan, 83 Ill. 56; T. W. & W.
Ry. Co. v. Muthersbaugh, 71 Ill. 572.

Moreover, the damage to the lawn by reason of the
injunction was impossible of ascertainment.    The witnesses
unite in testifying that the sand blew and for years had
blown all over that country like snow.    " It was a wilder-
ness of sand."    There is no way of determining from the
proof how much sand was blown upon the lawn from the
territory affected by the injunction and how much from
the adjoining lands.

The decree is affirmed.