EMIL WESTPHAL

v.

EDNA AUSTIN, BY NEXT FRIEND, ETC.

*Intoxicating Liquors—Means of Support—Loss of—Dram Shop Act, Sec. 9—Evidence—Instructions.*

1.  In an action under Sec. 9 of the Dram Shop Act, the burden of proof is upon the plaintiff to show that the defendant caused the injury in whole or in part, and this can not be assumed without proof.

2.  To make a liquor dealer liable under the statute, he must create the very intoxication, habitual or otherwise, from which the injury follows. During the time that the sales are going on, the party using the liquor must be contracting by the use of it, in whole or in part, the disease of which he afterward dies.

3.  It is not enough in such case to say that he had an appetite formed by the sale of the liquor, which led to his final injury, long after the first seller ceased to sell him liquor.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Mr. J. E. McPHERRAN, for appellant.

Mr. J. D. ANDREWS, for appellee.

LACEY, P. J.   This was a suit brought by the appellee against the appellant to recover damages' for an alleged injury to her means of support, claimed to have been caused by the sale of intoxicating liquor to the father of said Edna, Martin V. Austin, by appellant, whereby he became drunken, diseased and sick, so as to waste and squander his property and neglect his support of appellee, and finally caused his death on December 25, 1885.   There is no proof in this record or any contention that the appellee received any other injury to her means of support except through the death of her father; we are not, therefore, called on to consider any other claim or cause of damage.   The appellee's case rests on the supposed fact that appellant sold her father intoxicating liquor, at various and divers times, to such an extent that the latter contracted the habit of habitual intoxication, in part, from the intoxicating liquor so sold him, and by reason of such habitual intoxication he contracted a disease of the liver called in technical language, *scirrhosis* of the liver, inducing dropsy, from which he died.   The appellee is the minor child of the deceased,

and the proof tends to show that such a support as her father gave her in his lifetime was worth from $200 to $250 per year. She recovered in this case of appellant the sum of $625, being the amount of the verdict of the jury.

The cause of action is based on Sec. 9 of the "Dram Shop" Act, Chap. 43, R. S., and the portion applicable to this case reads as follows: "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of such intoxication, habitual or otherwise, of any person, shall have a right of action, in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person."

The facts in this case, aside from those claimed to be drawn by inference, are about as follows: Prior to 1880, Martin G. Austin, of the age of fifty-one years and three months when he died, December 3, 1885, was engaged in farming in the vicinity of Morrison, Whiteside County, Illinois, and in March, 1880, removed with his family into the city. Up to 1880 or 1881, he was said to be a sober man. In the latter part of 1879 and 1880, he visited appellant's saloon and got drinks, and so on down to the spring of 1882, and was not refused liquor by appellant during that time. He was frequently in this saloon and every saloon in the town, of which there were three, during the same time.

But in the spring of 1882, appellant put him on the "black list," so called, and refused absolutely to sell him any more drinks. This was done in consequence, as appellant testified, of his "drinking too much." Two or three days before he was put on the "black list," appellant testifies he saw him "full" on the streets, and the deceased's wife testified that in the spring of 1882 her husband was in the habit of "getting intoxicated occasionally." It appears his business habits were good. The deceased was a brother of William S. Austin, and they were engaged in the stock business together. The proof is quite clear to our minds that appellant never sold deceased any intoxicating liquors after the spring of 1882,

though McGee, a brother of Mrs. Austin, wife of deceased, testified that he saw Austin purchase intoxicating liquors at one time in December, 1882, at appellant's saloon, as appears in the abstract. But this is positively denied by the bar-tender, who testified he did not make that, or any other such sale to him after the spring of 1882; and from the fact that the proof shows that deceased was often refused intoxicating liquor by all the bar-tenders at appellant's saloon, and from the further fact all testify none of them ever sold him any, and that such was the positive orders of appellant to them, and from the fact that deceased always took "pop," a non-intoxicant, at the bar, we think it is clear McGee must have been mistaken; but if not, we think it could make no difference as far as the issues in the case are concerned. There was some evidence going to show that at times when deceased called for anything at the saloon, "pop" would be handed out to him, and he would say that he wanted the other kind of "pop," and then something else would be handed him. But none of the witnesses could state that he took anything but "pop," and all the bar-keepers testified that he never got anything else. The evidence makes the impression clearly on our minds that appellant stuck to his resolve made in the spring of 1882, never to sell deceased any more intoxicating liquors, with commendable honesty and fidelity.

The evidence also shows that deceased, after this time, was engaged with his brother in the stock business till the spring before his death, and that he kept drinking, grew much worse in the last year, of liquor procured elsewhere, and that finally he died. At the time appellant ceased selling him intoxicating liquor till shortly before his death the evidence fails to show that deceased was in bad health or was sick. Dr. Sigar, the physician who attended Austin in his last illness, is the only witness who testified about deceased's ailment, which he calls scirrhosis of the liver, and that, in his opinion, his decease was caused by drinking to excess of spirituous liquors, and that the disease caused his death. The doctor only attended him about a month before his death, but could not swear positively that such was the cause of death. There is

an entire want of evidence to show the disease of which he is supposed to have died was in the slightest degree fastened on him, or that he was affected with it in the spring of 1882, at the time appellant ceased to sell him intoxicating liquors. And in fact, the evidence would compel the belief that the deceased was a well man in the spring of 1882, and for a long time thereafter, and that his disease, if contracted from the use of intoxicants, was not so contracted till long after 1882.

The burden of proof was upon appellee to show that appellant caused the injury in whole or in part, and this can not be assumed without proof. The case appears to have been tried in the court below on the theory, that if the appellant furnished intoxicating liquors to the deceased and thereby contributed in any appreciable degree toward the formation and continuation in him of the habit of intoxication whereby an injury was caused to the support of the appellee, then the appellee would have a cause of action, and that it made no difference how much time elapsed between the formation of the habit and the time when the injury to the means of support is sustained, provided the person in whom it is formed continues to be an habitual drunkard as a natural and probable result of the habit so formed, etc.; and so the jury was instructed by the appellant's fifth instruction given, and also more plainly in the first instruction, in telling the jury in the fifth point as one of the elements of the plaintiff's cause of action which the jury were to consider, to wit: "That liquor sold, given or furnished by Emil Westphal, the defendant, either by himself, his agents or servants, while attending his saloon, contributed in an appreciable degree toward the formation in said Martin B. Austin or the continuation in him of the habit of drunkenness, in consequence of which he died." These instructions were, no doubt, the basis of recovery in the court below. We do not understand the principles there announced are in accordance with the provisions of the statutes. The statute nowhere mentions anything in regard to the formation of the habit of intoxication. It does not make the seller of intoxicating liquors liable for the formation of the habit in any person by which he may be led on afterward in a

course of inebriety and final disease and death.   The person injured, according to the statute, must be so injured as to entitle him to recover "in consequence of intoxication"—not in consequence of having the taste for liquor formed by the selling of drinks to him.   The intoxication, it is true, from which the injury is to follow, may be habitual, but the injury must, at least, be in consequence of the *intoxication*.   According to the doctrine announced in the instructions, the habit of drunkenness need not even be formed by reason of the person becoming intoxicated either in whole or in part from the liquor obtained from the seller.   It would be sufficient if he were sold enough, short of causing intoxication, to create the appetite in him which might continue for years and the person be temperate at the end of the time when this liquor was sold, and yet the person to whom it was sold might afterward become an habitual drunkard from liquors wholly sold by others.

It seems to us that this could not have been the intention of the law.   We think the reasonable construction of the law is, that the party made intoxicated by the sale of liquor must be injured in part, at least, by the sale of liquor; that is, that the seller must create the very intoxication, habitual or otherwise, from which the injury follows.   During the time that the sales are going on the party using the liquor must be contracting by the use of it, in whole or in part, the disease of which he afterward dies.   It is not enough to say ne is having an appetite formed in him by the sale of the liquor which may or may not lead in the future to his final injury long after the first seller has ceased to sell him any liquor.

This, it seems to us, would be a strained and an unreasonable construction of the statute, and would be to hold that a remote cause instead of a proximate one, would be sufficient basis or recovery.   To apply the doctrine to this case, let us suppose, which appears to be about the truth, according to the evidence, that when appellant ceased selling Austin liquor in the spring of 1882, the latter was a perfectly sound man without any seeds of disease, as far as the evidence shows, lurking around him, on account of which he afterward died; that the disease was entirely caused by liquors sold to him by others after that

time, in which selling appellant had no part whatever. Could it be said, in the language of the statute, that appellant, by selling deceased liquor, caused his death, and thereby injury to appellee in whoie or part? It appears to us not. The appellant's selling of the liquor in such case might be the cause of the cause but not the cause itself. This is not sufficient, as was decided by the Supreme Court in Schugart v. Egan, 83 Ill. 56.

The court in that case quotes with approval what was said by Lord Bacon on the subject, who said: "It were infinite for the law to consider the cause of causes and their impulsion one on another, therefore contenteth itself with the immediate cause, and judgeth of acts by that without looking to any farther degree."

The statute in question is penal in its nature and character, and must be strictly construed, at least, reasonably. Cruse v. Aden, 127 Ill. 231, and many other cases might be cited on the same point. To give the statute the latitudinarian construction sought to be put upon it in this case by appellee's counsel, would be to open the field wide for all kinds of unreasonable and wild speculations.

If we should hold with the appellee in this case in accord with the construction of the statute claimed for her, a man who sold another a few drinks of intoxicating liquors in years long past, and thereby contributeo, in part, in him, in an appreciable degree, to an appetite for intoxicants, though no injury were done except the formation of the appetite, could be hunted up ana made responsib.e for all the damages accruing to those depending on him for support on account of injuries resulting to him wholly from liquors long afterward sold to him by others; the bare statement is enough to show the unreasonableness of such a construction of the statute. In the opinion of this court by Justice Upton in the case of this same appellant against Albert Austin, a brothei of appellee, where the supposed cause of action was based on the same facts as appear in this record, filed at the May term, 1891, we used this language: "We think the evidence and circumstances in evidence are entirely too remote, weak and inconsequential

Danforta v. Cleary.

to connect the appellant with the sale of intoxicating liquors to the father of appellee so as to charge the appellant in a legal sense with producing the habitual intoxication of the father of the appellee, as charged in the declaration, or which in fact led to cause the affection of the liver of which appellee's father died, or caused his death." And the judgment in that case was reversed for the reason that there was no evidence to support it.

It has always been felt by the courts to be exceedingly difficult to trace death to a remote cause with any degree of certainty. In view of the fact and the dangers to be incurred in attempting it, our legislature has seen fit to control that matter in the criminal code. The statute in substance provides that no one can be convicted of murder or manslaughter where the deceased did not come to his death within a year and a day from the time the supposed cause of death was given, be it by a stroke or otherwise administered. Sec. 195, Chap. 38, R. S. And such was the common law prior to the passage of the statute. Whether this principle should apply to the Dram Shop Act, by analogy, we need not decide, for we regard the evidence as insufficient, without such application. More than three years and a half after appellant's sales, and deceased's intoxication therefrom, elapsed before death, and without other evidence, the cause thereof could not be traced thereto in any degree. The verdict of the jury was contrary to the evidence. The judgment of the court below is therefore reversed.

*Judgment reversed.*

Judge CARTWRIGHT, having tried the case in the court below, took no part in its consideration here.