Adam Shugart

*v.*

Ann Egan.

Intoxicating liquors—*liability of seller for death of party purchasing.*
The seller of intoxicating liquor to a husband who becomes intoxicated by it, and, in consequence of abusive language used by him, is assaulted and killed by a third party, is not liable in damages to the wife for the death.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Mr. JOHN V. EUSTACE, for the appellant.

Mr. B. H. TRUSDELL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Since a rehearing was ordered in the present case, we have again considered the objections urged to the rulings of the court below, and have come to a different conclusion from that announced in the opinion first filed, upon the question of damages resulting from the death of the plaintiff's husband.

It is claimed that the plaintiff's husband, while in a state of intoxication caused by liquors obtained by him from the defendant Friel, insulted or menaced one McGraw, who thereupon stabbed him, inflicting a wound whereof he died shortly afterwards. The court below, in giving and refusing instructions, ruled that this entitled the plaintiff to recover of the defendants compensatory damages for the loss of her husband's life, as well as for other damages resulting, proximately, from the obtaining of liquors by him from Friel.

The statute authorizes a recovery by the plaintiff from the defendant for "all damages sustained" in consequence of the act of Friel in letting her husband have liquor, and "also for exemplary damages;" and the question to be determined is, whether damages resulting from the loss of his life, under the circumstances, are within the contemplation of the statute.

The words, "damages sustained," should be construed with reference to their known legal signification, *i. e.*, to mean such damages as, in legal contemplation, are to be regarded as the result of the wrongful act.

It by no means follows, merely because a person, while in a state of intoxication, receives an injury, that it can be said, in a legal sense, the act of letting the persons have the liquor inducing the intoxication, caused the injury.

It was said by Lord BACON, "It were infinite for the law to

consider the cause of causes, and their impulsion one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Bacon's Maxims, Reg. 1; Broom's Legal Maxims, 165.

The rule is of frequent recognition in the decisions of this court, although there has, sometimes, been difficulty in satisfactorily determining whether particular acts were to be regarded as the immediate or the remote cause. In *Fent et al.* v. *The T., P. & W. R. R. Co.* 59 Ill. 351, it was said, quoting from 2 Parsons on Conts. (1st Ed.) p. 456, "Every defendant shall be held liable for all those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was, therefore, under no moral obligation to take into consideration." This would seem to be equally as applicable to actions founded on torts as to those accruing upon contracts. Addison, in his work on Torts, under the head of "Special and Extraordinary Damages," says: "All damages which ordinarily and in the natural course of things, might fairly be expected to result, and have resulted, from the commission of the wrongful act, are recoverable, provided they are claimed in the declaration."

It has also been held, that the intervention of the independent act of a third person, between the wrong complained of and the injury sustained, which was the direct or immediate cause of the injury, breaks the causal connection; and, consequently, there can, in such case, be no recovery except as against the person whose immediate agency produced the injury. See Wharton on Negligence, § 134, and authorities there cited.

Here, the death not resulting from intoxication or from any disease induced or aggravated by the use of liquor, but solely from the direct and willful act of McGraw, we have a case clearly within this principle.

All that can be certainly said of the act of Friel in letting plaintiff's husband have liquor, is, that act caused or contrib-

uted to his intoxication; his intoxication *may* have been the cause of his insulting or menacing McGraw, and McGraw's act of stabbing him *may* have been because of this insult or menace; and because of this stabbing he died. But it is not entirely certain he would not have insulted or menaced McGraw if he had not had any liquor, nor is it entirely certain that McGraw stabbed him in consequence of such menace or insult, because elements affecting the mental organizations and dispositions of the parties, may have existed in this instance, as they have in thousands of others of like character, inducing the tragic result, entirely independent of the influence the liquor had upon the deceased. It can not be said that Friel should have foreseen that his letting the deceased have liquor would lead to his death or bodily harm, at the hands of McGraw, or by violence from any source, because this was an exceptional and not a natural or probable consequence. It is a natural and probable consequence of letting a drunkard have liquor, that he shall become intoxicated, and, by reason thereof, suffer mental or physical impairment, waste his means, and do violent, absurd and silly acts, for experience proves that these results, in general, in greater or less degree, follow. But it is the exception that a drunkard is slain or violently assaulted, while in a state of intoxication, for words spoken or acts done by him while in that condition; and when it does happen, it is, in general, because of the wicked and malicious heart of the assailant, who is ready to avail of every pretext to gratify his brutal and murderous propensities; and it is no more to be anticipated than any other criminal act of a third party.

As viewed by mankind in general, it is believed the unfortunate condition of the intoxicated, instead of inviting attack, appeals to the sympathies for protection against violence.

Our conclusion is, the court below erred in its rulings upon the point indicated, and for this error the judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. CHIEF JUSTICE SHELDON, and Mr. JUSTICE SCOTT, dissenting: It is natural, and of every day occurrence, for an intoxicated person to provoke a quarrel and the receipt of injury, by reason of his intoxication. The jury, upon evidence adduced, have found there was here such a state of facts, and we think the plaintiff is entitled to her judgment.