Cynthia K. Casey, Plaintiff-Appellee, v. Donald Burns, Doing Business as Don's Tap, Defendant-Appellant.

Gen. No. 10,843.

Second District.

October 11, 1955.

Rehearing denied November 10, 1955.

Released for publication November 11, 1955.

Bozeman, Moran & Klockau, of Moline, for appellant; Bernard J. Moran, and Hubbard B. Neighbour, both of Moline, of counsel.

Elmo E. Koos, of Peoria, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

This is an appeal by the defendant, Donald Burns, from a judgment entered on a verdict of a jury in favor of the plaintiff in the sum of $1,500, in a suit for dam-

ages under the so-called Dramshop Act, (Ch. 43, Ill. Rev. Stats. 1953, par. 135 [Jones Ill. Stats. Ann. 68.042]). The plaintiff wife, Cynthia K. Casey, claimed injury to her means of support in consequence of the intoxication of her husband, Frederick Casey, allegedly caused by the sale of alcoholic liquors by the defendant to the plaintiff's husband, and that as a direct and proximate result of such intoxication the plaintiff's husband was allegedly struck about his head and body by one Virgil Osborn and James Collins, thereby causing serious injury and disability to her husband and injury to the plaintiff in her means of support.

The defendant moved for a directed verdict at the close of the plaintiff's evidence and at the close of all the evidence, and moved for judgment notwithstanding the verdict, which motions were denied, and the denial of those motions is the only error relied upon on this appeal. The defendant is not seeking a new trial. The principal grounds for reversal here urged are that the plaintiff failed to prove that Casey's injury and the plaintiff's loss of means of support were the proximate result of the intoxication, that the verdict cannot stand because it is not, in this respect, supported by competent proof, inasmuch as the only evidence tending to establish that the intoxication was the proximate cause of Casey's injury and the plaintiff's loss of means of support was incompetent and inadmissible, and that if such evidence was competent and admissible then the evidence shows that an intervening and unforeseeable agency, a wilful, wanton, and malicious act of someone else, and not the intoxication, was the proximate cause of the injury to Casey and to the plaintiff's means of support.

The plaintiff's husband, Casey, called as a witness for the plaintiff, testified that he entered the defendant's tavern, in Peoria, known as Don's Tap, about 1:15 to 1:30 o'clock p. m., June 29, 1952. Burns' stepfather was tending bar until 3:00 or 4:00 p. m. A bartender named

319

Osborn came to work about 3:00 p. m. Casey purchased six to ten bottles of beer and had 6 to 8 drinks of whiskey, spending about $5 in all. These drinks he purchased from Burns' stepfather or Virgil Osborn, a bartender then employed by defendant. The last thing he can remember, before later waking up in a hospital, is ordering a drink and not having enough money to pay for it, and someone at another table saying: "I'll pay for your drink." The defendant Burns was not in the tavern when Casey was there.

The evidence further shows that Casey was found by the Peoria police (including Police Officer Crider) after a call to go to Don's Tap, at 9:21 o'clock p. m., June 29th. Casey was found by the police lying flat on his back along a fence in an areaway about 20 feet from the rear door of the defendant's tavern, unconscious, breathing hard, his head and face bloody, with many cuts and bruises about his eyes and left side of his head and face. The police noted the odor of alcohol on his breath. He was sent by ambulance to a hospital. The police then went to the police station, arrived there about 10:30 p. m., and while there Police Officer Crider and the defendant Burns had a conversation, to which we refer hereinafter, certain other police officers being present at the time.

Police Officer Crider was a witness for the plaintiff. The principal, if not only, evidence tending directly to prove the specific means by which Casey was injured was that of Officer Crider. He testified, over the objections of the defendant, that the defendant Burns, about 10:30 o'clock p. m., on June 29th, in the Peoria police station turned over a blackjack and a knife to the police; told Crider the knife was owned by Casey, the blackjack was one that was kept behind the bar at the tavern; that he (the defendant) was not there at the time; he got the blackjack from behind the bar; that he knew what had happened to Casey; told him

320

(Crider) that his bartender (Osborn) had struck Casey with a blackjack that he had kept behind the bar; Crider further testified that the defendant Burns was at the station about 20 minutes, then returned to the tavern with the police, turned a blackjack over to them which he said he got from underneath the bar, and in handing over the blackjack the defendant said: "This is the one Osborn hit Casey with." Officer Crider further said the defendant Burns told him he knew what had happened to Casey by a customer that was in the place at the time and by one of the bruises involved in using the blackjack, but the Court sustained the defendant's objection to that question and answer so far as what the defendant knew that came from a customer, and struck that part of the witness' answer.

The defendant Burns, called by the plaintiff·under Sec. 60 of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060], was cross-examined by the plaintiff's counsel, and then also examined by counsel for the defendant, who brought out the testimony that Osborn had told him (the defendant) that Casey came in the tavern intoxicated, and because he was intoxicated he (Osborn) refused to serve him. The defendant Burns also testified, so far as material, that Osborn was his employee, and worked at the place the date in question until 9:00 o'clock p. m.; that Casey had been a casual patron, in and out of the place, during the year prior to June 29, 1952; that he came in two or three times a week; that when he was sober he was all right, but if he had too much he was rather obnoxious; that (over the defendant's objections) the defendant talked to Osborn the evening of June 29th after the defendant returned to the tavern at about 9:30 p. m.; the defendant "understood" when he came in that Casey had been taken to the hospital; Osborn mentioned that Casey had been in and he refused him a drink; the defendant went to the police station that evening, where he talked to some police

officers, but made no "statement" regarding Casey; and Osborn is not now employed by the defendant.

It also appears, for whatever its significance may be, that Casey has a suit pending in the Circuit Court of Peoria County for assault and battery against Burns and Osborn,—Casey v. Burns, No. 41613, at law,—which is undetermined.

Donald Burns, the defendant, did not testify in chief as a witness for the defendant. Nor did Virgil Osborn, the defendant's bartender, testify as a witness for the defendant.

 There appears to be no question but that the plaintiff is the wife of Casey, that she was dependent on him, that Casey was intoxicated at the time and place in question, that the defendant by selling or giving him alcoholic liquor caused the intoxication, in whole or in part, that Casey was hurt and disabled, and the plaintiff has been injured in her means of support. The basic issue seems to be whether such injury was "in consequence of the intoxication," i. e., whether Casey's intoxication was the proximate cause of his being hurt and disabled and the plaintiff being so injured in her means of support: Whiteside v. O'Connors (1911), 162 Ill. App. 108; Hill v. Alexander (1944), 321 Ill. App. 406. Under the circumstances, the question presented by the appeal, therefore, is the rather narrow issue of whether there is any competent evidence, together with all reasonable inferences to be drawn therefrom, standing alone, taken with all its intendments most favorable to the plaintiff, tending to prove, and from which the jury might reasonably find, that the plaintiff was injured in her means of support "in consequence of the intoxication" of her husband Casey, as a proximate result of the intoxication. On this record we are not concerned with the weight or credibility of the evidence. Reasonable inferences may be drawn by a jury from established facts, and a verdict may not be set aside merely because the jury could have drawn

different inferences from the evidence. Only where there is a complete absence of probative facts to support the conclusion drawn by the jury is it reversible error to overrule a motion for judgment notwithstanding the verdict: Lindroth v. Walgreen Co. (1950), 407 Ill. 121; the principles applicable on such a motion are the same as on a motion for a directed verdict, and are well settled: Neering v. Illinois Cent. R. Co. (1943), 383 Ill. 366; Blumb v. Getz (1937), 366 Ill. 273; Ciuferi v. Bullock Min. Co. (1947), 332 Ill. App. 1.

The defendant claims that the testimony of Officer Crider as to the occurrences and declarations related by Burns, purporting to be on the knowledge of Burns, was incompetent as admissions against interest because Burns' knowledge of what happened or what, if anything, Osborn did was apparently based upon what some tavern customer or Osborn had told him (Burns), and such occurrences and declarations related to matters not within the defendant's own personal knowledge and are hearsay.

The defendant cites no Illinois authority in support of his position in that respect, although he does refer to a few cases in other jurisdictions,—Pennsylvania, Alabama, North Carolina, New York, Tennessee, Utah, and Missouri,—to the effect, in substance, that an admission against interest by a party to a suit is not competent or admissible when based on something someone else has told the party and where the party has no personal knowledge of the subject matter.

The general rule, and the greater weight of authority, however, is to the contrary. Ordinarily any admissions against interest of a party to the suit relative to the subject matter of the suit, tending to prove or disprove any material fact, are competent and admissible as original, substantive evidence against that party when inconsistent with the claim or defense he asserts in the suit. The law holds everyone responsible for what he says to the extent that his sayings may be

used as evidence against him of the truth of what he has said. And, by the greater weight of authority, an admission by a party constitutes competent, admissible evidence notwithstanding the party may have had no personal knowledge of the subject matter, but the lack of knowledge affects the weight of such evidence: 20 Am. Jur. (Evidence) pp. 460–461; 31 C. J. S. (Evidence) pp. 1023–1025, 1027, 1091; ordinarily such admissions against interest by a party when made outside of Court are not conclusive on the party against whom they are offered and they may be explained, rebutted, or contradicted by other proper evidence: 31 C. J. S. (Evidence) p. 1164; such admissions are to be considered and weighed by the trier of the facts like other evidence, in the light of all the evidence in the case, and if voluntarily made and properly proved they may dispense with the necessity of further proof of the fact admitted: 31 C. J. S. (Evidence) p. 1178.

■ It is always competent, as substantive evidence, to prove a voluntary admission of the opposite party in interest to his prejudice, where it relates to matter material to an issue being tried, and such is not objectionable as hearsay: Brown v. Calumet River Ry. Co. (1888), 125 Ill. 600; Van Meter v. Gurney (1926), 240 Ill. App. 165; Stump v. Dudley (1918), 285 Ill. 46; Johnson v. Peterson (1911), 166 Ill. App. 404; Second Borrowers' & Investors' Bldg. Ass'n v. Cochrane (1902), 103 Ill. App. 29; the declarations of a party are admissible in evidence against him on the principle that what he says against his interest may be considered as true, —such admissions are to be received and considered by the jury in connection with the other evidence in the case and it is the province of the jury to determine what weight shall be given them: Dufield v. Cross (1851), 12 Ill. 397. Admissions of a party outside of court, where no elements of estoppel are involved, are not conclusive on the party and the party may disprove them by other evidence: Ayers v. Metcalf (1886), 39

324

Ill. 307; Young v. Foute (1867), 43 Ill. 33; Ray v. Bell (1860), 24 Ill. 444. We are unable to conceive of any reasonable theory that would completely exclude evidence of voluntary, material admissions of a party against his interest and tending directly to support the other side's theory of the case: Fitzgerald v. Coleman (1904), 114 Ill. App. 25. Admissions may be implied from conduct, as well as expressed by words, and may sometimes be implied from mere silence where there is opportunity to act or speak and where the circumstances properly and naturally call for action or reply from men similarly situated: Bell v. McDonald (1923), 308 Ill. 329.

We find no distinction in the foregoing representative group of Illinois cases, so far as competency and admissibility in evidence is concerned, between voluntary admissions as to material facts of a party having personal knowledge and a party not having personal knowledge of the subject matter of the admissions. In either case the admissions are competent and admissible. The weight of such evidence is, however, like any evidence, to be determined by the jury or trier of the facts and the party's lack of personal knowledge of the subject matter, or some part of it, if such is the case, may properly be considered in determining the weight thereof.

 The admissions against interest by the defendant, as testified to by Officer Crider, were, therefore, competent and admissible as such, even though to some extent they may have related to matters not within the defendant's own personal knowledge. The weight to be attached thereto, however, was for the jury to determine. The defendant was not conclusively bound thereby, though, and was at liberty to endeavor to explain, rebut, or contradict the alleged admissions. The defendant, however, did not testify in chief as a witness for himself, and Osborn, his bartender, did not testify for the defendant.

 What is the proximate cause of an injury is ordinarily a question of fact, to be determined by the jury from a consideration of all the evidence and attending circumstances,—it can arise as a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from the facts: Phillabaum v. Lake Erie & W. R. Co. (1924), 315 Ill. 131. An intervening, efficient cause is a new and independent force, the intervention of which was not probable or foreseeable by the first wrongdoer, which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury: Phillabaum v. Lake Erie & W. R. Co., supra; Neering v. Illinois Cent. R. Co. (1943), 383 Ill. 366. Where the party responsible for the initial act knows or should know that, if an occasion is given, a particular so-called intervening cause will be likely to exert itself, the furnishing of such an occasion may be in itself an act causing such party to be liable for the result flowing as the effect of such intervening cause, where the intervening cause is within the control of the party responsible for the initial act: Phillabaum v. Lake Erie & W. R. Co., supra. The intervention of independent, concurrent, or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable: Neering v. Illinois Cent. R. Co., supra; O'Brien v. Musfeldt (1951), 345 Ill. App. 12.

In Neering v. Illinois Cent. R. Co., supra, a personal injury case, the Court held the plaintiff could recover damages for injuries suffered as a result of being assaulted by a third person, who had no connection with the railroad, while she was awaiting the arrival of a train at a station, and the Court held the abnormal criminal act of this third person was not an intervening cause breaking the chain of causation.

In Schroder v. Crawford (1880), 94 Ill. 357, an action under the Dramshop Act, the Court said it is not the intention of the statute that the liquor alone, of itself, exclusive of other agency, should do the whole injury, and held that a plaintiff widow could recover damages for injury to her means of support where her husband had become intoxicated and nothing was known of the circumstances of his death except that early the next morning his body was found on a railroad track, he having evidently been run over by a train, and there being two tracks between the place where he became intoxicated and his home, that such was a natural and reasonable consequence of the intoxication, that the intoxication was the proximate cause, and the intervening agency of the railroad cars was not the proximate cause.

In Haw v. 1933 Grill, Inc. (1938), 297 Ill. App. 37, an action under the Dramshop Act, the Court held a plaintiff wife could recover damages for injury to her means of support where her husband became intoxicated at a tavern, became noisy and boisterous, as he had done at that tavern several times before, and one of the tavern agents or managers struck and injured the husband in attempting to eject him, and it was immaterial whether the tavern agent's act was wilful or accidental, for the intoxication of the husband was a contributing factor and a proximate cause of the injury, and the defendant must, under the circumstances, be presumed to have foreseen that its act of selling the liquor might have produced or been followed by the altercation in which the husband was injured, it not being necessary that the defendant should have foreseen the actual result, it being sufficient that such a result might reasonably occur.

In Zahn v. Muscarello (1948), 336 Ill. App. 188, a dramshop case, the Court held the plaintiff widow could recover damages for injury to her means of support, where the husband became intoxicated, was last

327

seen alive about 8:30 p. m. of the day he was intoxicated when certain of his friends helped put him on board his docked tugboat in the river, and several days later his body was found in the river near the tugboat; that he came to his death in consequence of the intoxication, that such was the proximate cause of his death, and the cause of death may be established by circumstantial evidence. There the Court held the evidence was sufficient to justify a verdict for plaintiff and further that the Trial Court properly denied the defendant's motions for directed verdict and for judgment notwithstanding the verdict.

In Jones v. Keilbach (1938), 295 Ill. App. 598, and 309 Ill. App. 233, a dramshop case, the Court held the plaintiff mother could recover damages for injury to her means of support where the son became intoxicated, left the tavern at about 1:30 a. m., and was next found badly injured and helpless at 4:20 o'clock a. m. that morning by the police in a hole in a vacant lot adjacent to a sidewalk, 3½ blocks from the tavern, in the opposite direction from his home, a board in a fence along the walk being loose at one end and down; that if the injury was received while intoxicated, through the agency of an outside force, and that force could not and would not reasonably have been brought into action except by reason of the intoxicated condition, the intoxication would be a contributing factor and would be the, or a, proximate cause; that an intervening cause does not exempt a defendant except when it severs all causal connection between the intoxication and the injury; that it is not indispensable that evidence of eyewitnesses be presented, and it was within the jury's province to determine whether the plaintiff was entitled to recover.

And another somewhat similar case is Klopp v. Benevolent Protective Order of Elks, Lodge No. 281 (1941), 309 Ill. App. 145, in which the defendant was also held liable.

328

We do not believe the principal cases the defendant refers to, Shugart v. Egan (1876), 83 Ill. 56, and Schmidt v. Mitchell (1876), 84 Ill. 195, are inconsistent with our views, when considered in the light of the particular facts of those cases and also when the other and later cases referred to above are considered.

 The issue or question of proximate cause here was a question of fact to be determined by the jury from consideration of all the evidence and attending circumstances, it was not a pure question of law,—and the jury has spoken by its verdict.

The inquiry here is whether the inference and result reached by the jury is one which is reasonable on the facts in evidence, not whether some other inference or conclusion might also have been reached: Lindroth v. Walgreen Co., supra. We consider appropriate what the Supreme Court of the United States said in Lavender v. Kurn (1945), 327 U. S. 645, 90 L. Ed. 916, at pp. 922–923—

"It is true that there is evidence tending to show that it was physically and mathematically impossible for the hook to strike Haney. And there are facts from which it might reasonably be inferred that Haney was murdered. But such evidence has become irrelevant upon appeal, there being a reasonable basis in the record for inferring that the hook struck Haney. The jury having made that inference, the respondents were not free to relitigate the factual dispute in a reviewing court. Under these circumstances it would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury. See Tiller v. Atlantic Coast Line R. Co. 318 US 54, 67, 68, 87 L. Ed. 610, 617, 618, 63 S. Ct. 444, 143 ALR 967; Bailey v. Central Vermont R. Co., 319 US 350, 353, 354, 87 L. Ed. 1444, 1447, 1448, 63 S. Ct. 1062; Tennant v. Peoria & P. U. R. Co. 321 US 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409,

15 NCCA (NS) 647. See also Moore, 'Recent Trends in Judicial Interpretation in Railroad Cases under the Federal Employers' Liability Act,' 29 Marquette L. Rev. 73.

"It is no answer to say that the Jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fairminded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The judgment is, accordingly, affirmed.

Affirmed.

EOVALDI and DOVE, JJ., concur.