(No. 34211.—

MAY DANHOF, Appellee, *vs.* HARRIET E. OSBORNE, d/b/a DUFFY's TAVERN, *et al.,* Appellants.

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

MORAN, KLOCKAU, MCCARTHY & JOHNSON, of Rock Island, and FRANK G. SCHUBERT, of Springfield, (BERNARD J. MORAN, of counsel,) for appellants.

EDWARD J. ZUKOSKY, of Wenona, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiff, May Danhof, filed suit in the circuit court of Marshall County under the Liquor Control Act (Ill. Rev. Stat. 1953, chap. 43, par. 135,) claiming loss of means of support "in consequence of the intoxication" of her husband, Cornelius P. Danhof (also known as "Pelie" Danhof,) who was beaten by one Harold Morris. The defend-

ants are Harriet E. Osborne, d/b/a Duffy's Tavern, and Henry A. Buttell, d/b/a Hank's Tavern.

The jury returned a verdict of $10,000, and the trial court entered judgment for that amount. The defendants appealed to the Appellate Court, Second District, and the judgment was affirmed. (10 Ill. App.2d 529.) The case is here on leave to appeal.

The sole question is whether there is liability under the statute for the acts here complained of, and since the jury has found in the affirmative, the evidence must be viewed in a light favorable to the plaintiff.

Briefly, this is the case before us:

For several months prior to February 24, 1954, the plaintiff's husband, Pelie Danhof, had been carrying on an adulterous affair with Vernetta Morris, the wife of Harold Morris. The plaintiff and Harold were both aware of this and protested to the offending parties.

On the afternoon of February 24, 1954, Pelie went to Duffy's Tavern in Lacon, where he drank with Vernetta and her sister, Virginia Niles. He said he drank 20 beers (jr. size) and 5 glasses of whisky; his companions said it was considerably less than that.

While Pelie, Vernetta and Virginia were in the tavern they were spotted by the plaintiff as she drove by in her car. Later she reported this to Harold, and they set out in the plaintiff's car to "catch them."

Meanwhile, Pelie and Vernetta had gone to Hank's Tavern in Chillicothe, where they were joined by Virginia Niles, George Martin (Virginia's "boy friend"), and Jackie Niles (Virginia's 9-year-old daughter). Pelie said he drank 6 beers at this tavern.

Finding that Pelie and Vernetta were not at Duffy's Tavern, Harold suggested that they might be in Chillicothe. As the plaintiff and Harold drove up to Hank's Tavern in Chillicothe, Pelie and Vernetta were just getting into Pelie's car. Harold jumped out, before the car fully stopped, and

went after his wife, saying, "I have caught up with you." Whereupon Pelie got out of the car and tried to stop him, stating: "Let's talk it over—I was just going to take her home." But Harold, undaunted, cursed Pelie, ("You have explained to me for the last time, you ————"), and hit him in the face with his fist. According to Pelie's testimony: "he hit me and I started to go and I stumbled and fell down." The plaintiff said Pelie "just, oh, tripped, and fell and hit his head on the side of the building, and he went down." Pelie said he was so drunk he could not defend himself.

After Harold struck Pelie, he again went after his wife. He caught her, started dragging her by the hair, but she escaped his grasp. At this moment, George Martin came out of the tavern, and Harold went after him too. He knocked Martin down twice (once with a rock, apparently). And after this, he returned to where Pelie was, kicked him in the head and cursed him.

The plaintiff, without checking on her husband's condition, then drove off in her car with Harold. In describing Harold's manner as they left the scene, she said: "He was real excited, and he was still mad, and he said he wished he had beat him up sooner. He wished he had listened to me sooner." At the trial, she testified further regarding Harold's conduct: "I never saw anyone so mad, and so little, to do so much as he did." (Harold, 34 years old, was 5 feet 5 inches tall and weighed 125 pounds; Pelie, aged 51, was 5 feet 7 inches and weighed 195 pounds.)

Later the plaintiff reported the incident to Pelie's employer, the mayor of Lacon, and then went to see her husband at the hospital. Pelie, severely injured, suffered a cerebral concussion, although the skull was not fractured. He was paralyzed on the right side, and his injuries are permanent.

There was a conflict in evidence as to whether the plaintiff was actively urging Harold to strike Pelie. Vernetta and Virginia said so, but the plaintiff said she did not.

To establish her cause of action, the plaintiff was required to prove that (1) the defendants sold intoxicating liquor to Pelie, (2) the liquor contributed to his intoxication, and (3) the plaintiff's injury (loss of means of support) was "in consequence of the intoxication."

The first two of these elements are clearly present, for it is uncontradicted that the defendants sold Pelie Danhof liquor which contributed to his intoxication. The dispute is over the third point, whether the plaintiff's injury resulted from Pelie's intoxication, *i.e.,* "in consequence of the intoxication." In addition, the defendants argue that the plaintiff is barred from recovering since she aided and encouraged Harold to inflict an injury upon her husband and thereby contributed to her own damages.

In respect to the causation question, the plaintiff concedes that she is required to prove that Pelie's intoxication was the proximate cause of the injury, (*King* v. *Haley,* 86 Ill. 106; *Cope* v. *Gepford,* 326 Ill. App. 171; *Bejnarowicz* v. *Bakos,* 332 Ill. App. 151,) or put another way, the effective cause. *Cook* v. *Kirgan,* 332 Ill. App. 294.

However, she insists, in effect, that the jury found the injury to be "in consequence of the intoxication," and since they are triers of the facts, their judgment must be approved. But the words of the statute permit of varying interpretations, and the final responsibility in this regard rests with the courts. Thus, even though a jury has spoken, the court must consider whether, as a matter of law, there is liability, even assuming the facts are as the jury could reasonably have found them to be. In this way the general standard (established by the legislature here) is "continually giving place to the specific one, that [a person] was bound to use this or that precaution under these or those

circumstances", and this "must at last be the business of the court." Holmes, The Common Law, page 111.

The instant Appellate Court decision would mark a significant extension in dramshop liability. Heretofore, liability in these loss-of-support cases has been limited principally to instances where the intoxicated person, because of the intoxication, commits some affirmative act resulting in harm to himself or others. (*E.g.,* drives an automobile in a reckless manner, *Bejnarowicz* v. *Bakos,* 332 Ill. App. 151; commits suicide, *Hammers* v. *Knight,* 168 Ill. App. 203; commits a criminal act, *Brown* v. *Moudy,* 199 Ill. App. 85; squanders his funds, etc., *Siegle* v. *Rush,* 173 Ill. 559; provokes an assault, *Casey* v. *Burns,* 7 Ill. App.2d 316.) We have found no case of liability wherein the intoxicated person has been deliberately attacked or assaulted by a third person and where that assault bore no relation to the intoxication but was brought on by other reasons.

The recent case of *Casey* v. *Burns,* 7 Ill. App.2d 316, is illustrative. There the intoxicated person was assaulted by a bartender. And since there was proof that he became "rather obnoxious" when drunk, the court concluded that it could reasonably be inferred, in the absence of proof to the contrary, that he had provoked the bartender into hitting him.

In the instant case, it was not Pelie's intoxication which provoked Harold's attacks, but his carrying on an illicit affair with Harold's wife. Pelie himself said that he tried to calm Harold, saying "Let's talk it over—I was just going to take her home." It is clear beyond all doubt that Harold's assaults bore no relationship to Pelie's intoxication. Harold's patience being exhausted and his anger heightened, he was out to inflict bodily harm upon Pelie regardless of where or when he found him and whether Pelie was drunk or sober. This is shown by his uncontradicted statement "You have explained to me for the last

time, you ———" and the plaintiff's characterization "I never saw anyone so mad, and so little, to do so much as he did" and "He was real excited, and he was still mad, and he said he wished he had beat him up sooner. He wished he had listened to me sooner." Therefore, whatever else may be said, it is certain that Pelie did not bring on an invasion of his person by reason of his being intoxicated.

There remain, then, but two considerations, advanced by the plaintiff and relied upon by the Appellate Court, namely, but for the drinking Pelie may not have been with Vernetta, and but for the drinking Pelie could have defended himself against Harold's assault.

As to the first of these it is sufficient to note that Harold and Vernetta had been intimate for several months prior to this incident, and it was not due to any moral insensibility brought about by liquor that prompted Pelie to so conduct himself.

The second point, Pelie's decreased ability to fight back, is more difficult. Now, of course, if "cause" be used in a purely descriptive sense as referring to any event without which the injury might not have occurred, a multitude of causes appear. To name but a few, Pelie and Vernetta's affair, the plaintiff's spotting of them in the tavern and reporting it to Harold, Harold's uncontrollable anger and assaults upon Pelie, and possibly, Pelie's inability to adequately defend himself. But without attempting to label these various factors a "cause" or a "condition," it is sufficient to note that each of them was not an event "in consequence" of which this injury occurred, as those words are used by the legislature. For to be such, there must be an element of reasonable foreseeability, or stated another way, it must be found that the "natural and probable consequence" of the particular event was the injury that occurred. (Cf. *Shugart* v. *Egan,* 83 Ill. 56.) When so viewed, we do not believe Pelie's intoxication, even assuming it substantially decreased his ability to defend himself,

was the "proximate" or "effective" cause of the plaintiff's loss of means of support. The initial blow struck by Harold (as well as the later kicking) was not provoked by the intoxication or by anything Pelie did by reason of his being intoxicated. Moreover, by his actions Harold intended to inflict serious bodily harm, an effect which was, in fact, produced. While the defendants could very well be charged with a duty to anticipate that an intoxicated person might, because of his being intoxicated, assault someone else and get involved in a fight (Cf. *Wall* v. *Allen,* 244 Ill. 456,) we do not believe it was intended to require them to anticipate every possible injury that might occur, even an assault by a person with whose wife the intoxicant has been carrying on an illicit affair, providing, of course, the latter did not provoke the assault by reason of his being intoxicated. The line must be drawn somewhere, for the statute obviously does not impose absolute liability or make the dramshop owner responsible for every injury incurred by a person to whom he sells liquor.

Since we have concluded that the intoxication was not the "proximate cause" of the injury, it is unnecessary to consider the defendants' additional claim that the plaintiff is precluded from recovering because of her part in the incident.

The judgments of the circuit court of Marshall County and of the Appellate Court are each reversed.

*Judgments reversed.*