ZBIGNIEW KUJBIDA, Plaintiff-Appellee, v. HORIZON INSURANCE AGENCY, INC., *et al.*, Defendants-Appellees (Safeway Insurance Company, Defendant-Appellant).

First District (5th Division)   No. 1—92—0683

Opinion filed March 25, 1994.

Parrillo, Weiss & O'Halloran, of Chicago (Keely Truax, of counsel), for appellant.

John Dabek, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Zbigniew Kujbida, filed this action in the circuit court of Cook County against defendants for breach of contracts to provide insurance coverage. Defendant, Safeway Insurance Company, brings this appeal from the trial court's order granting partial summary judgment in favor of plaintiff on the issue of whether the insurance policy in question had been cancelled.

FACTS

In mid-April, 1989, plaintiff purchased an automobile from Berens Mercury in Chicago. At that time, a Berens employee assisted plaintiff in applying for automobile liability insurance through defendant Allante Insurance Agency (Allante). In his insurance application, plaintiff and his wife, Regina Kujbida, were listed in the column labelled "Names of Drivers." The only driver's license number shown on the application was that of plaintiff. Mrs. Kujbida did not have a driver's license at that time, nor did she know how to drive.

At Allante's request, defendant Horizon Insurance Agency, Inc. (Horizon) arranged for defendant Safeway Insurance Company (Safeway) to issue an insurance policy for plaintiff. Horizon also arranged for monthly premium payments to be made to defendant Copper Hill Financial Corporation (Copper Hill).

After Safeway issued its policy, it requested that plaintiff or Mrs. Kujbida complete and sign an "Exclusion of Named Driver(s)" form to exclude Mrs. Kujbida from coverage under the policy. Plaintiff claims to have signed and returned the form to Allante, but, according to the affidavit of a Safeway employee, Safeway never received that completed form.

On April 30, 1989, Safeway returned plaintiff's premium payments, and on May 2, 1989, according to the affidavit of a Safeway employee, Safeway mailed a "Notice of Cancellation" to plaintiff. Safeway also claims to have sent a copy of the cancellation notice to Horizon. Item 1 of the cancellation notice states that plaintiff's coverage would cease on June 1, 1989. Item 2 states "REASON for cancellation is indicated on the reverse side by item(s) G." The reverse side of the form lists a series of possible reasons for cancellation, labelled "A" through "J." Item G states, "Failed to disclose information necessary for acceptance or for proper rating of the risk in his application or in response to inquiry by his broker or by the company or by his agent."

Subsequently, on June 24, 1989, plaintiff was involved in an automobile accident. Safeway refused to honor plaintiff's claim under the policy. On August 16, 1990, plaintiff filed a complaint against Ho-

rizon, Copper Hill, Allante and Safeway, alleging breach of the insurance contract. Safeway's answer states as an affirmative defense that the policy was cancelled effective June 1, 1989.

On December 3, 1991, the trial court entered a partial summary judgment in plaintiff's favor and against Safeway solely on the issue of whether the policy had been cancelled. The trial court ruled that the cancellation notice was ineffective, as a matter of law, because it "fails to list a specific explanation of what plaintiff failed to disclose." The trial court predicated its ruling upon section 143.15 of the Illinois Insurance Code, which provides, in pertinent part, "All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation." Ill. Rev. Stat. 1991, ch. 73, par. 755.15.

OPINION

Safeway contends that the question concerning its compliance with the specificity requirement of section 143.15 of the Insurance Code is a question of fact rather than a question of law. Safeway concedes that the issue of compliance with the statute would have been a question of law if no reason whatsoever had been shown on the cancellation notice. However, Safeway contends that, specificity being a matter of degree, fair-minded persons could reach different conclusions as to whether the reason stated on the cancellation notice complied with the statute. Therefore, even though there is no dispute as to what words appear on the cancellation statement, the question of whether the reason given constitutes "a specific explanation of the reason or reasons for the cancellation" is a question of fact giving rise to conflicting inferences which precludes the entry of summary judgment.

Plaintiff contends in his brief that the question of whether Safeway complied with the statute is a question of law. However, he conceded during oral argument that there are varying degrees of specificity and, therefore, a determination as to whether a given reason complies with the statute can be a question of fact. Nevertheless, plaintiff contended that fair-minded individuals could not differ regarding the reason given in this particular case, *i.e.*, that the only possible conclusion is that the reason given is not specific enough to comply with the statute because it does not state what information was required from plaintiff.

A motion for summary judgment is proper only where, construing the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent, "there is no genuine issue as to any material fact" and the movant is " 'entitled to a judgment as a matter of law.' " (*Purtill v. Hess* (1986), 111 Ill. 2d 229,

240, 489 N.E.2d 867, quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c); see also *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293, 560 N.E.2d 586.) Under the Code of Civil Procedure, partial summary judgment may be entered on a major issue in a case where the court finds there is no genuine issue of material fact as to that particular issue. Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(d).

Summary judgment should be allowed only when the right of the moving party is clear and free from doubt. (*Gatlin*, 137 Ill. 2d at 293.) If fair-minded persons could draw different inferences from the facts not in dispute, a triable issue exists and a motion for summary judgment must be denied. This requirement protects a party's right to a trial by jury or the right to present the factual basis for a case where there may be a material dispute. See *Schoondyke v. Heil, Heil, Smart, & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 642, 411 N.E.2d 1168; *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1050, 340 N.E.2d 539.

Determining whether a particular issue involves a question of law to be decided by the trial judge or a question of fact to be decided by the jury is often difficult. (See *Pullman-Standard v. Swint* (1982), 456 U.S. 273, 288, 72 L. Ed. 2d 66, 79, 102 S. Ct. 1781, 1790 (where the United States Supreme Court noted "the vexing nature of the distinction between questions of fact and questions of law" and the absence of any "rule or principle that will unerringly distinguish a factual finding from a legal conclusion").) Ultimate facts, *i.e.*, facts which are outcome determinative (*Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 501, 80 L. Ed. 2d 502, 517, 104 S. Ct. 1949, 1959-60), often necessitate the simultaneous interpretation of a legal standard and extension of that standard to factual material from which factual inferences must be drawn, giving rise to what is referred to as a mixed question of law and fact. (See *Tucker v. Spalding* (1872), 80 U.S. (13 Wall.) 453, 455, 20 L. Ed. 515, 516; *Baumgartner v. United States* (1944), 322 U.S. 665, 671, 88 L. Ed. 1525, 1529, 64 S. Ct. 1240, 1243-44.) Ordinarily, the procedure for processing such mixed questions of law and fact permits a proper allocation of function between the trier of law and the trier of fact. Where a jury is involved, the trial court instructs the jury as to the legal standard which should govern, but the jury determines the ultimate fact by applying the legal standard to the evidence presented. (*Tucker*, 80 U.S. (13 Wall.) at 455, 20 L. Ed. at 516.) For example, in *Dowell v. William H. & Nelson Cunliff Co.* (1975), 26 Ill. App. 3d 388, 324 N.E.2d 660, the court stated that the right to control was the legal test for establishing a "loaned-employee relationship" under the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1

*et seq.*), but the determination of whether a loaned-employee relationship existed in the particular case was a question of fact where the undisputed facts allowed more than one reasonable inference to be drawn. *Dowell*, 26 Ill. App. 3d at 393.

■ Where, as in the present case, a statute is involved, questions regarding the proper construction or interpretation of the statute are questions of law. (*Lane v. Titchenel* (1990), 204 Ill. App. 3d 1049, 1052-53, 562 N.E.2d 1194; see also *Rodgers v. St. Mary's Hospital* (1990), 198 Ill. App. 3d 871, 875-76, 556 N.E.2d 913 ("determination of the meaning and scope of statutes is ordinarily a question of law for the courts to determine").) Where the words of a statute permit varying interpretations, it is the responsibility of the court to set a general standard to be applied in determining whether there is compliance with the statute under a given set of facts. (See *Danhof v. Osborne* (1957), 11 Ill. 2d 77, 81, 142 N.E.2d 20 (It was the court's function to set the general standard under which an injury should be considered to be "in consequence of the intoxication" under the Liquor Control Act (Ill. Rev. Stat. 1953, ch. 43, par. 135)).) Where the historical facts of a case are undisputed, summary judgment may well be appropriate where the inferences to be drawn from those facts are not in conflict. However, where different conclusions may reasonably be drawn, there is a triable issue of fact which is not properly resolved on a motion for summary judgment. In *O'Vadka v. Rend Lake Bank* (1990), 203 Ill. App. 3d 1007, 1015, 561 N.E.2d 360, the court wrote:

> "In determining if there is a genuine issue of material fact, inferences may be drawn from the facts that are not in dispute. [Citation.] Thus, if fair-minded persons could draw different inferences from the facts, a triable issue exists and a motion for summary judgment must be denied. [Citation.] It is only when the undisputed facts are susceptible of but a single inference that the issue becomes one of law."

See also *Quality Lighting, Inc. v. Benjamin* (1992), 227 Ill. App. 3d 880, 884, 592 N.E.2d 377; *Schoondyke*, 89 Ill. App. 3d at 642.

In the present case, a finding as to whether the reason stated on the cancellation notice is sufficiently specific to comply with the statute is a finding of an ultimate fact, a conclusion to be derived from application of the legal standard required by the statute to the undisputed fact of the words used in the notice sent by Safeway. It is the court's function to interpret what is meant by "a specific explanation of the reason or reasons for cancellation," thereby establishing the legal standard against which the sufficiency of any particular notice can be measured. Once this legal standard is

established, the question still remains whether the language used in the notice meets that standard.

If the sufficiency of the stated reason is ascertainable merely by reference to the legal standard, or if only one conclusion may reasonably be drawn, it is a question of law. (See, *e.g., Danhof*, 11 Ill. 2d at 82. (court stated it was "clear beyond all doubt" that under the facts of the case the Illinois Liquor Control Act requirement that the injury be "in consequence of the intoxication" in order to impose liability had not been met).) On the other hand, if application of the legal standard to the reason stated in the notice could allow more than one conclusion to reasonably be drawn, there is a question of fact for the jury to resolve. Thus, an analysis as to whether a question of fact exists must start with a determination of the legal standard.

We note that the trial court, in granting partial summary judgment on the issue of cancellation, did not enunciate a legal standard as to the interpretation of the specificity requirement in the statute and then apply that standard to the particular words used in the cancellation notice in this case. Instead, the trial court, making no distinction between these two components, concluded only that the stated reason did not comply with the statutory requirement because it failed to disclose what information had been requested. Therefore, it is for this court to determine on review the legal standard to be applied. See *Harris Bank v. Village of Mettawa* (1993), 243 Ill. App. 3d 103, 113, 611 N.E.2d 550 ("construction of a statute, ordinance, or constitutional provision is a question of law which is independently determined by the reviewing court").

In determining the meaning of a statutory provision, the court's main objective is to give effect to the legislature's intent. (*Barango v. Hedstrom Coal Co.* (1957), 12 Ill. App. 2d 118, 130, 138 N.E.2d 829.) Legislative intent may be ascertained from "the language used by the legislature, the evil to be remedied and the object sought to be attained. In construing a statute the court will not be confined to its literal meaning." *Barango*, 12 Ill. App. 2d at 130.

With regard to the language used by the legislature, Black's Law Dictionary defines "specific" as "[p]recisely formulated or restricted; definite; explicit; of an exact or particular nature *** tending to specify, or to make particular, definite, limited or precise." (Black's Law Dictionary 1254 (5th ed. 1979).) "Specific" has also been defined as "characterized by precise formulation or accurate restriction *** free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." (Webster's Third New International Dictionary 2187 (1986).) Thus, it would appear from the definitions of the word "specific" that the explanation on a cancella-

tion notice must include pertinent information in some degree of particularity and precision. However, the definition alone does not yet determine the degree of precision or particularity which would suffice to comply with the statute. For that determination, it is helpful, as in *Barango*, to look to "the evil to be remedied and the object sought to be attained." *Barango*, 12 Ill. App. 2d at 130.

Neither of the parties has cited, nor does there appear to be, any Illinois case law interpreting the specificity requirement of the cancellation notice statute or discussing its underlying rationale or purpose. However, numerous cases decided in other States which have similar statutory requirements for notices of cancellation or nonrenewal are in consensus as to the underlying rationale or purpose of such statutory provisions. For example, the case of *State Farm Mutual Automobile Insurance Co. v. Department of Insurance* (1990), 134 Pa. Commw. 226, 578 A.2d 999, involved the question of whether a notice of nonrenewal complied with a statutory requirement that any notice of cancellation or refusal to renew must " 'state the specific reason or reasons of the insurer for cancellation or refusal to renew.' " (*State Farm Mutual*, 134 Pa. Commw. at 229, 578 A.2d at 1000, quoting Pa. Stat. Ann. 40 § 1008.5 (1992) called "Act 78.") The court stated that the purpose of the provision was "the protection of policyholders from improper nonrenewals or cancellations by insurers." (*State Farm Mutual*, 134 Pa. Commw. at 230, 578 A.2d at 1001.) The regulations under that statute required that the reasons must be "clear and complete, such that a person of average intelligence and education can understand them." *State Farm Mutual*, 134 Pa. Commw. at 231-32, 578 A.2d at 1001-02.

The Massachusetts statute considered in *Fields v. Parsons* (1968), 353 Mass. 706, 234 N.E.2d 744, provided that no cancellation was valid unless there was written notification, giving "the specific reason or reasons for such cancellation." (*Fields*, 353 Mass. at 707, 234 N.E.2d at 745, quoting Mass. Gen. L. ch. 175, § 113A(2) (1987).) In that case, an insurer stated the reason for cancellation as "Misstatements in application to Question 8A." The court found that the reason in the notice was not sufficient to comply with the statute because it did not "inform the insured of the substance of question 8A, of the nature of the 'misstatements' discovered, or indeed, whether the question was included in the application for registration or for insurance." The court stated that compliance with the statute was a "safeguard against unintentional or mistaken action to the detriment of the traveling public and to the insured" and pointed out that, had an adequate notice been sent, plaintiff may have found grounds on which to challenge the cancellation or plaintiff may have

been able to secure coverage through another insurer. *Fields*, 353 Mass. at 707, 234 N.E.2d at 745.

The same rationale, to require sufficient information to enable the insured to protest an improper cancellation, has been ascribed to a similar New York statute which states that notices cancelling fire insurance policies must set forth "the specific reason or reasons for such cancellation." (See *Nassau Insurance Co. v. Hernandez* (1978), 65 A.D.2d 551, 552, 408 N.Y.S.2d 956, 957. See also *De Urbaez v. Lumbermens Mutual Casualty Co.* (1986), 68 N.Y.2d 930, 502 N.E.2d 993, 510 N.Y.S.2d 78 (where the court reversed the trial court's finding upon summary judgment that a cancellation was effective).) In that case, the reason stated in the cancellation notice was "Company request: failure to remedy material defects." The New York court of appeals found that the reason given was not specific enough to apprise the insured of the defect to enable him to contest the cancellation or correct the defect in order to obtain substitute coverage. *De Urbaez*, 68 N.Y.2d 930, 502 N.E.2d 993, 510 N.Y.S.2d 78 (relying upon the dissent to the appellate division's opinion). See *De Urbaez v. Lumbermens Mutual Casualty Co.* (1986), 116 A.D.2d 534, 537-38, 497 N.Y.S.2d 919, 922 (Murphy, P.J., dissenting).

Although there are no Illinois cases expressly on point, the underlying purpose ascribed to these specificity requirements by the consensus of cases from other jurisdictions is cogent and persuasive. (See *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 660, 397 N.E.2d 511 ("In construing an Illinois statute, decisions of other States construing similar laws are entitled to respect and consideration").) Arguably, that underlying rationale is self-apparent from the four corners of the statute itself. (See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207, 585 N.E.2d 1032 ("The language used in the statute is the primary source for determining legislative intent"); *Tarnow v. Hershey* (1968), 91 Ill. App. 2d 124, 234 N.E.2d 409; *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 402, 251 N.E.2d 253.) This approach is also consistent with the record of the Senate debates on the Illinois provisions which indicates that the specificity requirement was intended to ameliorate "the problem of companies providing ambiguous reasons for cancellation or nonrenewal of policies." 80th Ill. Gen. Assem., Senate Proceedings, May 18, 1977 (comments of Senator Merlo).

■ Pursuant to this rationale, it is safe to say that the specificity provision would require that a notice must unambiguously provide sufficient information to enable the insured to determine whether the reason is valid so that, if not valid, the insured can contest the

cancellation and, if valid, the insured can correct the defect in order to obtain substitute insurance coverage. Thus, as a matter of law, to comply with the specificity requirement of section 143.15 (Ill. Rev. Stat. 1991, ch. 73, par. 755.15), the explanation for cancellation must be precise and particular enough to fulfill that purpose.

Having determined the legal standard to be applied, we must next determine whether it is more appropriate for the judge or for the jury to decide the ultimate fact regarding the statutory adequacy of the explanation in this case. If we conclude that the standard is met if "the reasons are clear and complete, such that a person of average intelligence and education can understand them," in order to determine the validity of the cancellation, as required by regulation in Pennsylvania (see *State Farm Mutual*, 134 Pa. Commw. at 231-32, 578 A.2d at 1001-02), then a jury is probably best suited to make the determination, just as jurors are best suited to decide matters under a "reasonable person" standard. (See *Sioux City & Pacific R.R. Co. v. Stout* (1873), 84 U.S. (17 Wall.) 657, 664, 21 L. Ed. 745, 749 ("It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge").) In any event, where reasonable persons could differ about whether the notice was sufficient to apprise the insured of the specific basis for his cancellation and, thereby, enable him to evaluate its validity, the ultimate question as to the sufficiency of the notice is one of fact which must be determined in this case by the jury as the designated trier of fact.

The case of *Kessler v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 540, 477 N.E.2d 1287, is in point. Although *Kessler* does not deal with the specificity requirement for cancellations in section 143.15 (Ill. Rev. Stat. 1991, ch. 73, par. 755.15), it deals with an identical requirement for nonrenewal notices. The notice statute for nonrenewals provides: "In all notices of intention not to renew any policy of insurance, as defined in Section 143.11 the company shall provide a specific explanation of the reasons for nonrenewal." (Ill. Rev. Stat. 1991, ch. 73, par. 755.17(e).) In *Kessler*, the court reviewed a trial court's issuance of a mandatory preliminary injunction requiring the insurer to provide malpractice insurance coverage pending a professional review board hearing provided for in the policy. The explanation in the nonrenewal notice in *Kessler*, "noncompliance with company guidelines," is roughly analogous in its degree of specificity to the reason on the cancellation notice in the present case. The appellate court wrote:

"When considering the propriety of a preliminary injunction, the

trial court does not decide contested issues of fact. \*\*\* [T]he trial court apparently found, that the notice of nonrenewal was not sufficiently specific as required by section 143.17(e) because it only gave as a reason for nonrenewal plaintiff's 'noncompliance with company writing guidelines.' However, in *Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 415 N.E.2d 1206, this court found a notice sufficiently specific that stated the reason for nonrenewal as 'poor loss experience.' [Citation.] In a trial on the merits, the notice here may ultimately be found not sufficiently specific. However, for purposes of ruling on the issuance of a mandatory preliminary injunction, this was not a question appropriately resolved." *Kessler*, 132 Ill. App. 3d at 545-46.

The case of *Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 415 N.E.2d 1206, at first glance would appear to support the contrary conclusion that, where the reason stated in the notice does not include sufficient detail to contest the insurer's decision, the reason may nevertheless be sufficient as a matter of law. However, *Steward* is distinguishable from *Kessler* and from the present case. In *Steward*, the court found that the reason stated on a notice of nonrenewal, "poor loss experience," complied with the statutory nonrenewal notice specificity requirement as it then existed under section 143.17 (Ill. Rev. Stat. 1977, ch. 73, par. 755.17(e)). (*Steward*, 92 Ill. App. 3d at 642.) We note, however, that the language of the specificity requirement of the nonrenewal notice statute in force in *Steward* was less demanding than the language used in the amended nonrenewal notice statute considered in *Kessler* and in the cancellation notice statute under consideration in this case. Under the controlling statute in *Steward*, prior to its amendment, nonrenewal notices were required merely to "specify the reasons for nonrenewal." (Ill. Rev. Stat. 1977, ch. 73, par. 755.17(e).) The former cancellation notice statute used the same language. (Ill. Rev. Stat. 1977, ch. 73, par. 755.15.) However, effective July 1, 1978, both provisions were amended to demand greater specificity by requiring "a *specific explanation of the reason or reasons* for the cancellation." (Emphasis added.) (Pub. Act 80—1128, eff. July 1, 1978.) See the record of Senate debates on the amendment of the specificity requirement which, as previously noted, indicates that the amendment of the cancellation and nonrenewal notice provisions was intended to ameliorate "the problem of companies providing ambiguous reasons for cancellation or nonrenewal of policies." 80th Ill. Gen. Assem., Senate Proceedings, May 18, 1977 (comments of Senator Merlo).

Thus, the court's finding in *Steward* that "poor loss experience" was sufficiently specific under the former statutory language simply

reflects its conclusion that the attempted compliance with the lower standard of specificity under the former nonrenewal provision did not give rise to a reasonable conflicting factual inference of noncompliance. That conclusion would not extend to validate the reason given in *Kessler*, since that reason itself was more vague than the reason given in *Steward* and the specificity requirement of the amended statute which controlled in *Kessler* was more demanding. Likewise, the conclusion reached in *Steward* does not apply to the reason given in this case under the specificity requirement of the amended cancellation notice provision which controls in our case.

■ Here, if anything, we might be inclined toward the conclusion that the notice in this case did not provide enough information for the plaintiff to determine what the alleged defect was, *i.e.*, what information was missing, so that plaintiff could contest the cancellation on the ground that he had submitted the exclusion of driver form. However, as in *Kessler*, we believe that reasonable minds might differ in this regard. Construing the information in the pleadings, affidavits, and other materials filed in this case strictly against the plaintiff, who moved for summary judgment, and liberally in Safeway's favor, as we must (*Gatlin*, 137 Ill. 2d at 293), we cannot say that the plaintiff's right to summary judgment is "clear and free from doubt." (See *Gatlin*, 137 Ill. 2d at 293.) The affidavit of a Safeway employee states that an exclusion of driver form was mailed to plaintiff for completion, but that the form was not returned to Safeway. Plaintiff acknowledged that he received the form. We therefore conclude that reasonable persons might differ as to whether the explanation on the cancellation notice, "Failed to disclose information necessary for acceptance or for proper rating of the risk in his application or in response to inquiry by his broker or by the company or by his agent," was sufficiently specific to enable plaintiff to determine the cause of the cancellation. This being the case, a genuine issue of material fact exists as to whether the cancellation notice complied with the statute, and the trial court improperly granted summary judgment on that issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

MURRAY, P.J., and McNULTY, J. concur.